(41 Misc. Rep. 27.)

HEALY v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County. June, 1903.)

1. CITIES—WATER SUPPLY—INJUNCTION—NONPAYMENT OF BILL.
    A lessee sued the city to restrain it from cutting off his water supply,
    registered by a water meter which was in perfect condition when
    delivered to the city by the manufacturer, on the alleged ground that
    he had failed to pay his bill for water rent. The evidence showed that
    the meter had been installed for 40 months, and had been inspected nine
    times before a defect was discovered in it, causing it to register much
    less water than had been actually used. There was nothing to show
    that plaintiff had ever tampered with the meter. *Held*, that a removal
    of the same would be enjoined, and a counterclaim of the city for the
    water used would be rejected, there being no sufficient proof of the
    amount used.

Action by Thomas J. Healy against the city of New York and
others. Judgment for plaintiff.

M. Edward Kelley and John E. Connelly, for plaintiff.

George L. Rives, Corp. Counsel (Chase Mellen, of counsel), for
defendants.

DAVIS, J. This action is brought to restrain the defendants from
cutting off the water supply from the plaintiff's premises on Columbus·
avenue, in the city of New York, upon which premises he is conduct-
ing a café and restaurant. The defendants claim that the water meter
on these premises failed for a long time to register correctly the
amount of water actually used by the plaintiff, because of the wrong-
ful and illegal interference with the meter by the plaintiff or his
agents; that the plaintiff wrongfully used this unregistered water;
and that the value of the water so used was $1,744.96. Demand of
payment was made upon the plaintiff, and, upon his refusing to pay,
the defendants threatened to cut off his supply of water unless pay-
ment was made within 10 days. Payment not having been made,
as demanded, defendant took steps to cut off the water, but was
restrained by a temporary injunction in this action, in which the de-
fendants now demand judgment dismissing the complaint and vacat-
ing the temporary injunction, and upon a counterclaim for $1,670.36,
with interest from February 18, 1902, the value of the water claimed
to have been misappropriated. The premises in question are used
by the plaintiff as a café and restaurant and comprise portions of Nos.
141, 143, 145, and 147 Columbus avenue. No. 141 was taken by him
October 27, 1898. He took the floor and basement of 143 in Novem-
ber, 1899. In October, 1901, he added the basement and one floor
of No. 145, and in January, 1902, he became lessee of one floor and
basement of No. 147. Such were his premises at the time of the
beginning of this action. The meter in question was placed upon
these premises October 15, 1898, and before the plaintiff took pos-
session. At the time the meter was set, it was sealed with the de-
partment seal, and could not be tampered with without breaking this
seal. From the time of its installation to January 1, 1902, there
were about nine different inspections of the meter by department in-
spectors, and on each occasion the seal was found to be intact, and

there appeared to be nothing in the working of the meter to indicate any imperfection, although no minute examination of its internal mechanism was made. In February, 1902, a department inspector broke the seal and made an examination of this internal mechanism. He found that 8 of the 10 teeth on the pinion between the 100 and 1,000 dials had been cut away. The effect of this was to cause a failure to register a very large part of the water passing through the meter; the defendants claiming that in this particular instance, and because of this defect, the meter registered only one-fifth of the water used. The meter was manufactured by the Thompson Meter Company. Before it was delivered to the city it was inspected by the inspector of the manufacturer. He testifies that it was in perfect condition. The meter was then sent to the keeper of the city pipe yard, whence in August, 1898, it was delivered to the plumber named in the application and permit. Before delivering it to the plumber, a test was made by the keeper of the pipe yard. He says that, after running 25 cubic feet of water through it, he concluded that it was in perfect order. A careful examination of this witness' testimony discloses, however, that his test was not a reliable one. The serious defects found in this meter could not have been discovered by simply running 25 cubic feet of water through it. The part tampered with was the pinion between 100 and 1,000 dials, and the failure to register water would take place on the 1,000 dial. Assuming the mechanism to be in perfect order, the passage of only 25 cubic feet of water through the meter would scarcely move the hand on the 1,000 dial. This fact makes the test applied in this case useless. Again, after leaving the pipe yard, the meter was in the possession of the plumber from August, 1898, until it was set on October 15, 1898, and it did not come into the possession of the plaintiff until October 27, 1898, when he took possession of the premises. On March 11, 1902, the defendants, upon the assumption that the plaintiff had tampered with the meter, sent him a bill for $593.80 for water claimed to have been used, but not measured, between October 15, 1898, and January 21, 1902, and threatened to cut off the water supply if the bill remained unpaid for 10 days. The amount named in this bill was arrived at by multiplying by five the amount of water actually registered between these dates. In the absence of fraud on the part of the plaintiff, this was manifestly an unsatisfactory, and indeed an unwarrantable, method. There is absolutely no evidence to show even approximately the date between October 15, 1898, and January 21, 1902, when the meter became disabled. The defendants afterwards abandoned the bill, however, and rendered another for $1,670.36, adopting a different method of computation, under which the amount of water charged for between these dates was fixed by reference to the average daily consumption between April 9, 1902, and May 9, 1902, with a new meter in use. But this method is equally useless, not only for lack of proof as to when the meter was tampered with, but also because the amount used between April 9, 1902, and May 9, 1902, when plaintiff was occupying all of the premises referred to, is no criterion of the amount used while his business was expanding from one store to four. It might be that the plaintiff could be required to pay one

or the other of the bills rendered, and in default thereof lose his water supply, if the measurement of the water actually used had been made impossible by his own wrongful act. But there is no sufficient proof here that there was any interference with the meter by the plaintiff or by any one with his knowledge. On the contrary, plaintiff's innocence of wrongdoing in this regard is quite obvious. Although the meter was on his premises, it was under constant and frequent inspection of the department, whose officers presumably had the seal, and the seal appeared to have remained intact until removed by one of these inspectors. In view of the foregoing, the bill rendered by the defendants was not such as it had a legal right to render to plaintiff, and a failure or refusal to pay it was not a violation of law or regulation which would give it a right to cut off plaintiff's water supply. It follows, therefore, that defendants' counterclaim must be dismissed, and judgment rendered for plaintiff as demanded, with costs.

Judgment for plaintiff, with costs.